FILED
CLERK
5/13/2013 1:00 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
METROPOLITAN LIFE INSURANCE
COMPANY,

                Plaintiff,

    -against-

WILLIAM L. MITCHELL, JR. and
CHARMAINE E. COOPER,

               Defendants.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
12-CV-1749 (ADS)(WDW)

**APPEARANCES:**

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
*Attorney for the Plaintiff*
100 Mulberry Street
Newark, New Jersey 07102
    By: Randi F. Knepper, Esq., Of Counsel

**Lyle Legal Services**
*Attorneys for the Defendant William L. Mitchell, Jr.*
32 Wintonbury Avenue
Bloomfield, Connecticut 06002
    By: Patrick G. Lyle, Esq., of Counsel

**Cooke & Clarke**
*Attorneys for the Defendant Charmaine E. Cooper*
33 Front Street
Suite 204
Hempstead, New York 11550
    By: Lance D. Clarke, Esq., Of Counsel

**SPATT, District Judge.**

    On April 10, 2012, the Plaintiff Metropolitan Life Insurance Company ("the Plaintiff") commenced this action by filing a Complaint in interpleader. In the Complaint, the Plaintiff alleges that it is a mere stakeholder that could be exposed to

double liability arising from the Defendant William L. Mitchell, Jr.'s ("Mitchell") and the Defendant Charmaine E. Cooper's ("Cooper," and collectively, "the Defendants") competing claims to life insurance benefits due and owed as a consequence of the death of William L. Mitchell, Sr.'s ("the Decendent").

Presently before the Court is the Plaintiff's unopposed motion for interpleader relief, requesting that this Court compel the Defendants to litigate, adjust and/or settle among each other their respective and lawful entitlement to the life insurance benefits, or otherwise to permit the Court to settle and adjust the claims and determine to whom the life insurance benefits should be paid. In addition, the Plaintiff seeks an order (1) wholly and completely discharging and absolving the Plaintiff, Cablevision Systems Corporation ("Cablevision") and the Cablevision Life Insurance Plan ("the Plan") from any further liability with respect to the life insurance benefits at issue; (2) releasing and discharging the Plaintiff, Cablevision, the Plan, their agents, fiduciaries, employees, representatives, predecessors, successors and assigns against any and all liability arising from the life insurance benefits at issue; (3) permanently restraining and enjoining the Defendants from instituting and/or prosecuting any other lawsuit against the Plaintiff, Cablevision or the Plan in connection with the life insurance benefits at issue; and (4) dismissing the Plaintiff from the action with prejudice and without any further liability related to the life insurance benefits at issue. Lastly, the Plaintiff seeks attorneys' fees and costs.

For the reasons that follow, the Court grants the Plaintiff's motion in part and denies the Plaintiff's motion in part.

# I. BACKGROUND

## A. Factual Background

The Decedent is a former employee of Cablevision and participated in the Plan. The Plan was an ERISA-regulated employee welfare benefit plan sponsored by Cablevision and funded by a group policy of insurance that was issued by the Plaintiff ("Group Life Insurance"). Under the Plan, the Decedent, as a Plan participant, had the right to name his beneficiary. In this regard, a Plan participant may designate a beneficiary in his application or enrollment form. However, a Plan participant also has the right to change his beneficiary at any time by sending a signed and dated written request to the Plaintiff. This written request must be sent within 30 days of the date that the beneficiary signs it.

The last beneficiary designation form for the Decedent on file with the Plan is dated March 2, 2004. The form names the Defendant Mitchell as the sole primary beneficiary of the Group Life Insurance benefits. Thereafter, the Group Life Insurance was scheduled to be canceled, and so the Decedent requested to convert $100,000 of his Group Life Insurance benefits to a personal life insurance policy. On March 10, 2011, as part of his application to convert, the Decedent completed an Application for Life Insurance form, in which he named the Defendant Cooper as the sole primary beneficiary of the personal life insurance benefits. Mitchell was designated as the contingent beneficiary.

In addition, the Decedent's Last Will and Testament stated as follows:

> I William L. Mitchell being of sound mind
> would not want my 401K, IRA/Retirement and life
> insurance beneficiary contested. Be it known that

> Charmaine E. Cooper has been and currently is 100% vested to receive all moneys vested to her. My son William L. Mitchell Jr. is a second beneficiary to life insurance only, if Charmaine E. Cooper is deceased. (My wish for her to live long and prosper). William L. Mitchell Jr. is to receive my electronics and jewelry. . . .
>
> I don't have many assets to divide among relatives or siblings, just my love and heart. Know that I love you all and that I know some will say that why would I leave my monetary wealth to Charmaine? My answer is because of my heart for her that has spoken the first time I have fell in love with her and I will leave this earth with this same love and I want all of you to respect that and my decision.

(Compl., Exh. H.)

On June 24, 2011, within 31 days of the cancellation of his Group Life Insurance, the Decedent died. However, at the time of his death, the Decedent was still eligible for the Group Life Insurance benefits under the Plan, and, as a result, the personal life insurance policy never took effect. In this regard, the Decedent was enrolled under the Plan for Group Life Insurance benefits in the amount of $201,000 ("the Plan Benefits"). Under the terms of the Plan, the Plan Benefits became payable to the proper beneficiary upon the Decedent's death.

On June 28, 2011, Cooper completed a Claimant's Statement seeking the Plan Benefits. On June 29, 2011, Cooper signed an Assignment of Proceeds of Insurance, assigning $9,590 of the Plan Benefits to Howard E. Miller, Inc., Funeral Directors, in connection with the burial of the Decedent. On August 31, 2011, Cooper, through her attorney, sent a letter to the Plaintiff advising the Plaintiff that Cooper sought the Plan Benefits on her behalf.

About one month later, on September 28, 2011, Mitchell wrote a letter to the Plaintiff informing the Plaintiff that he was the sole child of the Decedent and was the named beneficiary. He also informed the Plaintiff that he had contacted Cooper in order to work out an agreement in which he offered her a portion of the Plan Benefits, but that Cooper did not respond.

**B. Procedural History and the Present Motion**

On April 10, 2012, the Plaintiff, on behalf of itself, Cablevision and the Plan, filed the Complaint in Interpleader against the Defendants, as well as Howard E. Williams, Inc. In the Complaint, the Plaintiff explained that it was unable to determine (1) whether a court would find that the March 10, 2011 Application for Life Insurance form to be enforceable and (2) if the March 10, 2011 Application for Life Insurance form is enforceable, whether the Cooper is entitled to all or a portion of the Plan benefits. The Plaintiff further explained that if the March 10, 2011 Application for Life Insurance form was enforceable, all or a portion of the Plan Benefits would be payable to Cooper, but would also be subject to the June 29, 2011 Assignment of Proceeds. However, if the March 10, 2011 Application for Life Insurance was unenforceable, the Plan benefits would be payable to Mitchell, based on the March 2, 2004 beneficiary designation form. According to the Plaintiff, it is a neutral stakeholder with no interest in the Plan Benefits.

On May 3, 2012, the Plaintiff moved to deposit the proceeds of the Plan Benefits with the Clerk of Court. On June 13, 2012, Cooper answered the Complaint and asserted a cross claim against Mitchell. On June 21, 2012, Mitchell answered the Complaint and the cross claim asserted by Cooper. Also on June 21,

2012, Mitchell moved for an Order directing the Plaintiff to disburse $9,590 from the Plan Benefits to Howard E. Williams, Inc.

Thereafter, on August 16, 2012, the Plaintiff and the Defendants filed a stipulation in which they agreed that the Plaintiff should pay $9,590 of the Plan Benefits to Howard E. Williams, Inc. On August 20, 2012, the Court approved the Stipulation. On September 14, 2012, the parties filed a second stipulation dismissing Howard E. Williams, Inc. from this action, which the Court approved on September 25 2012.

On September 25, 2012, the Court granted the Plaintiff's motion to deposit the Plan Benefits with the Clerk of the Court. On October 18, 2012, the Plaintiff deposited the Plan Benefits with the Clerk of the Court. About three months later, on January 25, 2013, the Plaintiff made the present motion for Interpleader Relief. Neither Mitchell nor Cooper has opposed the Plaintiff's motion.

**II. DISCUSSION**

**A. Interpleader**

An "interpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit." <u>Fidelity Brokerage Servs., LLC v. Bank of China</u>, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002) (citing <u>Washington Elec. Coop. v. Paterson, Walke & Pratt, P.C.</u>, 985 F.2d 677, 679 (2d Cir. 1993)). When faced with an interpleader action, courts generally use a two-step approach. <u>Fidelity Brokerage</u>, 192 F. Supp.2d at 178. In the first step, a court must determine whether the interpleader action is appropriate, and, if it finds that

the action it is appropriate, the plaintiff will be discharged from liability. See New York Life Ins. Co. v. Connecticut Development Authority, 700 F.2d 91, 95 (2d Cir. 1983); Locals 40, 361 & 417 Pension Fund v. McInerney, No. 06 Civ. 5224, 2007 WL 80868, *3 (S.D.N.Y. Jan 9, 2007). In the second step, the Court adjudicates the claims among the remaining adverse parties. Id. For the purpose of resolving the present motion, at this juncture the Court need only consider the first step.

In order to determine whether an interpleader is appropriate under the first step, a court must, as an initial matter, ensure that the plaintiff has satisfied the jurisdictional requirements for bringing the action. These requirements are provided in 28 U.S.C. § 1335. In this regard, § 1335 requires that the plaintiff bringing the interpleader action is in possession of a single fund of value greater than $500. 28 U.S.C. § 1335(a); see also Bankers Trust Co. v. Manufacturers Nat. Bank of Detroit, 139 F.R.D. 302 (S.D.N.Y. 1991) (citing State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S. Ct. 1199, 18 L. Ed. 2d 270 (1967)). Section 1335 also requires that the interpleader action involve "[t]wo or more adverse claimants[] of diverse citizenship." 28 U.S.C. § 1335(a)(1); see also Hudson Pak Establishment v. Shelter for Homeless, Inc., 224 F. App'x 26, 29 (2d Cir. 2007). However, § 1335's diversity requirement calls for "only 'minimal diversity,' that is, diversity of citizenship between two or more claimants without regard to the circumstance that other rival claimants may be co-citizens." Hudson Pak Establishment, 224 F. App'x at 29 (quoting State Farm Fire & Cas. Co, 386 U.S. at 530). Lastly, § 1335 requires that the plaintiff deposit the fund at issue with the court. 28 U.S.C. § 1335(a)(2).

Assuming the jurisdictional requirements of 28 U.S.C. § 1335 are satisfied, the appropriateness of an interpleader action rests on whether the plaintiff has "a real and reasonable fear of double liability or vexatious, conflicting claims" against the single fund, Washington Electric Coop., Inc., 985 F.2d at 679, "regardless of the merits of the competing claims," Fidelity Brokerage, 192 F.Supp.2d at 177. See also Locals 40, 361 & 417 Pension Fund, 2007 WL at *3. Of importance, during the first step, "a court need not analyze the merits of the claims because '[t]he stakeholder should not be obliged at its peril to determine which of two claimants has the better claim.'" Fidelity Brokerage, 192 F.Supp.2d at 178 (quoting John Hancock Mutual Life Ins. Co. v. Krfat, 200 F.2d 952, 954 (2d Cir. 1953)) (alterations in the original). If the court is satisfied that the abovementioned requirements are met, the court will discharge the plaintiff from liability. New York Life Ins. Co., 700 F.2d at 95.

**B. As to Whether the Plaintiff has Satisfied the Requirements of the First Step**

As set forth above, a plaintiff that commences an interpleader action must allege: (1) that it is in possession of a single fund of value greater than $500; (2) that the action involves two or more adverse claimants of diverse citizenship; (3) that it has deposited or is depositing the fund with the court; and (4) that it has a real and reasonable fear of double liability or vexatious, conflicting claims. Here, the Court finds that the Plaintiff has satisfied all of these requirements. The Plan Benefits at issue involve $201,000, and thus the proceeds of the policy exceed $500. Second, the Defendants in this case are of diverse citizenship, as Mitchell resides in the state of Connecticut while Cooper resides in the state of New York.

Third, pursuant to the Court's September 25, 2012, the Plaintiff has deposited the relevant funds with the Clerk of the Court. Lastly, the Plaintiff, as well as Cablevision and the Plan, is a neutral party, or stakeholder, that has been confronted with the Defendants' conflicting claims to the Plan Benefits. The Plaintiff, Cablevision and the Plan have taken no position as to the proper disbursement of the Plan Benefits.

As all of the requirements of the first-step have been met, the Court finds that this interpleader action is appropriate. Accordingly, the Court finds that the Plaintiff, Cablevision and the Plan should be granted interpleader relief.

**C. As to the Plaintiff's Requested Relief**

The Plaintiff has requested several forms of relief in its present motion. First, the Plaintiff has moved to be dismissed from this action with prejudice and to be discharged from any further liability. In addition, the Plaintiff requests that Cablevision and the Plan also be discharged from and against any and all liability that might arise in connection with the Plan Benefits.

"[28 U.S.C. §] 2361 authorizes a district court to discharge the stakeholder in any civil interpleader action from further liability to claimants." Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund, 982 F.2d 783, 787 (2d Cir.1992). Generally, once an interpleader plaintiff has satisfied the Section 1335 jurisdictional requirements of an interpleader claim, "[t]he court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake." 4

James Wm. Moore et al., Moore's Federal Practice § 23.03[2][a] (3d ed. 2005). See New York Life Ins. Co., 700 F.2d at 95; Locals 40, 361 & 417 Pension Fund, 2007 WL at *3.

As discussed above, the Court finds that the Plaintiff satisfied all of the requirements of the first step, and there is no indication, that as neutral stakeholders, the Plaintiff, Cablevision or the Plan are independently liable to any claimant. Therefore, the Plaintiff, Cablevision, the Plan their agents, fiduciaries, employees, representatives, predecessors, successors and assigns are released and discharged from any further liability to any party in this action or arising out of the Plan Benefits. See 28 U.S.C. §§ 1335, 2361; Fed. R. Civ. P. 67.

In addition, the Plaintiff has requested this Court to permanently enjoin the parties to this action from commencing any other actions or proceedings seeking payment of the Plan Benefits. Pursuant to 28 U.S.C. § 2361, a district court may "'enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court' and to 'make the injunction permanent.'" Bank of America, N.A. v. Morgan Stanley & Co. Inc., No. 10 Civ. 6322, 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011) (quoting 28 U.S.C. § 2361). Of importance, "[§] 2361 enables a party meeting the requirements of [§] 1335 to obtain a restraining order without following the procedures set forth in [Federal Rule of Civil Procedure] 65 [], which normally governs the issuance of injunctive relief." Sotheby's, Inc. v. Garcia, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992). "An injunction against overlapping lawsuits is desirable to insure the

effectiveness of the interpleader remedy. It prevents the multiplicity of actions and reduces the possibility of inconsistent determinations." Id. at 1066.

In this case, a permanent injunction restraining the Defendants from continuing or bringing any suits against the Plaintiff, Cablevision or the Plan with regard to the Plan Benefits at issue is necessary to protect the Plaintiff, Cablevision and the Plan from overlapping lawsuits and to ensure the effectiveness of the interpleader remedy. Therefore, the Plaintiff's request for a permanent injunction is granted.

**D. As to Attorneys' Fees**

As a final matter, the Plaintiff seeks an award of attorneys' fees and costs associated with this case. In general, a reasonable award of fees and costs to a plaintiff in an interpleader case is appropriate where the Court finds that the plaintiff is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." Septembertide Pub., B.V. v. Stein and Day, Inc., 884 F.2d 675, 683 (2d Cir. 1989). "A disinterested and innocent stakeholder, who has been required to expend time and money to participate in a dispute not of his own making and the outcome of which has no impact on him, is entitled to costs and attorneys' fees." Sparta Florida Music Group v. Chrysalis Records, 566 F. Supp. 321, 322 (S.D.N.Y. 1983).

However, "[t]he decision to award fees and costs . . . is left 'to the sound discretion of the district court.'" Feehan v. Feehan, No. 09 Civ. 7016, 2011 WL 492852, at *6 (S.D.N.Y. Jan. 10, 2011), adopted by 2011 WL 497776, at *1

11

(S.D.N.Y. Feb. 10, 2011) (quoting Travelers Indem. Co. v. Israel, 354 F.2d 488, 490 (2d Cir.1965)). Moreover, "courts need not award attorneys' fees in interpleader actions where the fees are expenses incurred in the ordinary course of business." Travelers Ins. Co. v. Estate of Garcia, No. 00 Civ. 2130, 2003 WL 1193535, at *4 (E.D.N.Y. Feb. 4, 2003); see also Correspondent Servs. Corp. v. J.V.W. Investments Ltd., 204 F.R.D. 47, 49 (S.D.N.Y. 2001). "This is particularly true in the case of insurance companies, where minor problems that arise in the payment of insurance policies must be expected and the expenses incurred are part of the ordinary course of business." Estate of Garcia, 2003 WL at *4; see also Israel, 354 F.2d at 490 ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader."). Indeed, "courts in this Circuit have typically declined to award insurance companies attorneys' fees and costs in interpleader actions." Feehan, 2011 WL at *7 (collecting cases).

Here, there is no question that the Plaintiff, a disinterested stakeholder faced with competing claims to the Plan Benefits, properly filed this action with the intent to deposit the disputed funds into court. Nevertheless, the Court adopts the view that "[c]onflicting claims to the proceeds of a policy are inevitable and normal risks of the insurance business. Interpleader relieves the insurance company of multiple suits and eventuates in its discharge. Accordingly [such actions are] brought primarily in the company's own self-interest." Companion Life Ins. Co. v. Schaffer, 442 F. Supp. 826, 830 (S.D.N.Y. 1977); see also Unum Life Ins. Co. of America v.

Scott, No. 10 Civ. 538, 2012 Wl 233999, at *3 (D. Conn. Jan. 24, 2012) ("[C]onflicting claims to the proceeds of insurance policies are normal risks of the insurance business and that the Plaintiffs' interpleader action is brought primarily in their own self-interest.").

The Plaintiff did not incur any unique expenses in filing the present interpleader action that would exceed the ordinary cost of doing business as an insurance company. See, e.g., Feehan, 2011 WL at *8 (noting that attorneys' fees and costs are not appropriate where the "interpleader action is not complex," the insurance company "did not provide any unique services" and the "action [did not] involve unique problems"). Therefore, the Plaintiff's request for attorneys' fees and costs is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that judgment providing interpleader relief in favor of the Plaintiff, and against the Defendants, is granted; and it is further

**ORDERED** that the Plaintiff, Cablevision and the Plan are wholly and completely discharged and absolved from any further liability, of whatsoever nature, to the Defendants and any other claimant in connection with the Plan Benefits; and it is further

**ORDERED** that the Plaintiff, Cablevision, the Plan, their agents, fiduciaries, employees, representatives, predecessors, successors and assigns are released and discharged from and against any and all liability, suits, debts, judgments, dues, sums and/or cause of actions whether at law or at equity, to any

person, entity, claimant, plaintiff, defendant or otherwise with respect to the Plan Benefits; and it is further

**ORDERED** that the Defendants are permanently restrained and enjoined from instituting and/or prosecuting any other suit, cause of action or civil proceeding in any state, federal or other court of competent jurisdiction against the Plaintiff, Cablevision or the Plan for the Plan Benefits; and it is further

**ORDERED** that this action is dismissed against the Plaintiff without prejudice; and it is further

**ORDERED** that the Plaintiff's motion for attorneys' fees and costs is denied; and it is further

**ORDERED** that the Plaintiff is directed, within ten days of the date of this Order, to submit an amended caption reflecting its dismissal from this action.

**SO ORDERED.**

Dated: Central Islip, New York
May 13, 2013

                                                ___*/s/ Arthur D. Spatt*_____
                                                  ARTHUR D. SPATT
                                            United States District Judge